RICE *v.* RICE.

1. DIVORCE—EVIDENCE—SUFFICIENCY.

    In husband's suit for divorce, where he was the only witness who testified in his behalf, and every statement made by him tending to support the charges in his bill was specifically denied by defendant when sworn as a witness, and her testimony was corroborated in many essential particulars, a decree dismissing the bill was justified.[1]

2. SAME—WHERE WIFE JUSTIFIED IN SEPARATING FROM HUSBAND DESERTION MAY NOT BE PREDICATED ON REFUSAL TO RESUME MARITAL RELATIONS.

    Where wife's separation from her husband in 1905 was justified by reason of his communicating to her a venereal disease, she was under no legal obligation to thereafter resume marital relations with him, and desertion cannot be predicated on her refusal to do so.[2]

    BIRD, J., dissenting.

[1]Divorce, 19 C. J. pp. 133, § 347, 143, § 367, 145, § 368; [2]Id., 19 C. J. p. 68, § 126 (Anno).
Venereal disease as grounds for divorce or separation, see notes in 5 A. L. R. 1016; 8 A. L. R. 1540.

Appeal from Mecosta; Barton (Joseph), J. Submitted April 14, 1925. (Docket No. 74.) Decided July 16, 1925.

Bill by Justin R. Rice against Ella C. Rice for a divorce. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Fred R. Everett,* for plaintiff.

*Arthur J. Butler,* for defendant.

BIRD, J. (*dissenting*). Plaintiff's bill was filed to obtain a decree of divorce from the defendant on the ground of extreme cruelty, particularly of desertion. The proofs show that the parties were married in the year 1899 in St. Louis, Missouri. They appear to have lived peaceably until 1904. In 1905 they separated. Two boys were born to them and they have since resided with their mother in St. Louis. In 1916, plaintiff talked over matters with defendant and requested her to live with him again. For a time she thought she would do so, but later notified him she would not renew the marital relation. In May, 1924, plaintiff began this action. Defendant appeared, answered and made a defense. The chancellor refused to grant plaintiff any relief.

Defendant justifies her refusal in 1916 to resume the marital relation on the ground that in 1904 he communicated the venereal disease of gonorrhœa to her; that this infection caused her serious injury; that as a result of it she was ill for a long time and was obliged to submit to one or more operations on account of it. There is much conflict in the testimony as to who was responsible for her condition. She testified plaintiff confessed that he was responsible for it, and that he contracted the disease on the Midway at the World's Fair in St. Louis in 1904. He denies this and charges defendant contracted the disease by

consorting with other men.    We will not attempt to
determine which was at fault for her condition.    As-
suming that all defendant charges was true, the real
question is, what was his and her physical condition
in 1916 when he requested her to live with him again?
If both had recovered from their maladies I am of the
opinion that her refusal to again resume the marital
relation was not justified, and that her refusal con-
tinuing since 1916 would amount to desertion in the
law.    In this opinion I am influenced by an agreement
of separation which they executed in 1910.    The
agreement provided for the payment to her of $150
a month.    The boys were to remain with her.    It
further provided that defendant should

"during the lifetime of this agreement, refrain from
bringing any suit for divorce against said party of
the first part, upon any alleged wrong or injury which
may have been done to her by said party of the first
part, or for any cause existing prior to the date of
this agreement, and this agreement during the time in
which it is effective may be used as and shall be a com-
plete defense to any such action."

Plaintiff also agreed to commence no divorce pro-
ceedings against her, based upon anything which may
have taken place prior to 1910.

The agreement was not to be binding for any stated
time.    A fair inference from this agreement is that
both were at least in some fault for the separation.
It is also fair to infer that each thereby condoned the
faults of the other which had occurred up to that date,
and the obligation was binding on defendant as long
as she was receiving the income the agreement pro-
vided for, or was receiving an income from the estate
of the father of the plaintiff.    By this agreement it
is fair to say that they both voluntarily shut the door
on what had happened prior to 1910.    There is no
complaint by either of the conduct of the other since

that time, except defendant's refusal to live with him again.

Defendant undertakes to avoid the conclusion of desertion by what happened prior to 1910. In view of her own agreement we do not think she should be permitted to do this. Evidently both were willing to bury their past follies, and this found expression in a solemn written agreement in which she agreed it would be binding on her while she was receiving the monthly compensation. There is no dispute but that she has received the compensation ever since the agreement was made. If the parties themselves were willing to forget what had occurred prior to 1910, I am of the opinion that the courts should do likewise.

In order to justify her refusal to live with plaintiff again she should have shown that she was physically unable to resume the marriage relation without injury to her health, or that his physical condition was such as to endanger her health, or that his conduct since 1910 had been such that it would afford no reasonable guaranty that her past trouble would not be again repeated. We are unable to find anything in the record bearing on these questions. Neither party makes complaint of the conduct of the other since 1910. The defendant's failure to make any showing along this line is rather persuasive that none of those things exist. The burden being upon her to justify her refusal, and she having failed in this respect, we think it is equitable to say that the ground of desertion is established.

The great difficulty with this union is that the "divine fire" has ceased to glow. This condition of things is hard to remedy. Such fire, when extinguished, rarely ever is rekindled, and in the exceptional cases where it is it lasts only a brief time. The interest which defendant manifests in the proceeding has the appearance of a fear that something will

happen to her monthly income of from $100 to $350 she is receiving from a trust created by plaintiff's father. One provision of the trust is that if she seeks and obtains a divorce her beneficial interest in the trust shall cease. There is, however, no provision of forfeiture if plaintiff shall obtain a divorce. She appears, therefore, to be in no danger of losing her compensation if a decree should be granted in this case.

While the statute does not make public policy a ground for divorce, if, in any given case, a legal cause exists and is shown, we may consider the question of public policy in granting or withholding a decree. These people are in middle life, and if, as we think, a legal cause exists, there is no sound reason for keeping them unwillingly tied to each other. To do so does not tend to make better citizens of them. We think under the proofs as they stand plaintiff is entitled to a decree of divorce on the ground of desertion. There is nothing in the record showing plaintiff's financial condition. In view, however, of the fact that plaintiff's father provided an income for her and the boys, nothing by way of alimony should be allowed except the nominal sum of one dollar. No costs should be allowed either party.

The decree dismissing plaintiff's bill should be reversed and a decree of divorce on the ground of extreme cruelty should be granted to the plaintiff, without costs to either party.

SHARPE, J. In my opinion, the trial court was clearly right in dismissing plaintiff's bill. He was the only witness who testified in his behalf. Every statement made by him tending to support the charges in his bill was specifically denied by defendant when sworn as a witness. This of itself would justify the action taken, as it cannot be said that the proof preponderates in his favor. Her testimony is, however, corroborated in many essential particulars. It is

significant that plaintiff's father was made a party to the separation agreement entered into in 1910. Defendant testified, without objection, that she consulted him and also plaintiff's sister, Mrs. Sheldon, about the advisability of her resuming marital relations with plaintiff in 1916, and "they told me he was not changed in any way, and I would make a mistake that would mean a legal separation again; that I had given him too many chances." Mrs. Sheldon, called as a witness by the defendant, testified: "As far as I know Mrs. Rice treated her husband perfectly all right," and that, "Since the separation in June, 1905, I have been in touch with Mrs. Rice. To my knowledge her conduct as a woman and a mother has been exemplary in every way so far as I know." On cross-examination she testified:

"*Q.* Mrs. Sheldon, you understand that these parties can not live together, don't you?

"*A.* Yes, I know of a reason why they shouldn't be divorced.

"*Q.* You think that they should be tied up together even though they can't live together, do you?

"*A.* We have always felt it would be wiser for Raymond not to have a divorce.

"*Q.* That is, you have thought so?

"*A.* I mean the family. * * *

"*Q.* And that is the only reason why you think that Mr. Rice should not be divorced, is it?

"*A.* Well, my father felt so very strongly on the subject that it is natural in the years I heard him discuss his troubles with my brother that I should be—should have imbibed some of his feeling about the matter, that it would be very much better for him not to be."

The plaintiff, while denying that he had become afflicted with a venereal disease while at the World's Fair at St. Louis, admitted that he had contracted such a disease while serving in the Spanish-American War. He testified that he told defendant he "was cured of it," but that he "had a recurrence of that later on to

a very little extent and that was cured up." It clearly appears that the operation performed on her in 1904 was due to his condition prior to that time. The only proof of misconduct on her part testified to by him is that, when taking the train for Hot Springs, where she was going for treatment, he saw her kiss a man named Walsh. This she denied, as did also Mr. Walsh as a witness. I find nothing in the record on which to base the statement that plaintiff "charges defendant contracted the disease by consorting with other men." The suggestion that "neither party makes complaint of the conduct of the other since 1910" is met by the fact that plaintiff left Mecosta county soon after the agreement was entered into and was gone six years, and it does not appear that thereafter he has lived in the vicinity of her home. Defendant's separation from plaintiff in 1905 was clearly justified. In my opinion, she was under no legal obligation to resume marital relations with him thereafter. Desertion cannot be predicated on her refusal to do so.

The decree is affirmed, with costs to defendant.

MCDONALD, C. J., and CLARK, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred with SHARPE, J.